**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | |
|---|---|
| **RANDON RAINS** | **CASE NO.  6:26-CV-00092** |
| **VERSUS** | **JUDGE S. MAURICE HICKS, JR.** |
| **PEAK N D T SOLUTIONS LLC** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

## REPORT AND RECOMMENDATION

Before the Court is Defendant Peak NDT Solutions, LLC's Rule 12(b)(6) Motion to Dismiss Plaintiff's First Amended Complaint. (Rec. Doc. 17). Plaintiff opposed the motion (Rec. Doc. 19), and Defendant replied (Rec. Doc. 23). The motion was referred to the undersigned magistrate judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the Court's standing orders. Considering the evidence, the law, and the parties' arguments, and for the following reasons, the Court recommends that Defendant's motion be denied.

## Facts and Procedural History

Plaintiff filed this putative collective action suit in January 2026 against his employer, Peak NDT Solutions, LLC, and a co-owner, Derrick Landry, asserting Fair Labor Standards Act (FLSA) and Alaska Wage and Hour Act (AWHA)

violations. (Rec. Doc. 1). In response to Peak's motion to dismiss the original complaint, Plaintiff filed an amended complaint on April 1, 2026. (Rec. Doc. 12).

Plaintiff alleges Peak employed him as a Level 2 NDT (non-destructive testing) Inspector from January 1, 2024 to September 13, 2025 in Texas and Alaska. (¶64). His job included visual, dimensional, magnetic particle, liquid penetrant, ultrasonic, and thickness testing and involved cleaning and preparing oilfield equipment parts. (¶67; 69-72). He alleges NDT Inspectors work long hours, mostly outdoors, in all weather conditions. (¶68). He traveled to Texas and Alaska and worked a minimum of twelve hours per day, five days/60 hours per week while in Texas, and seven days/84 hours per week while in Alaska. (¶77-81). Despite working at least sixty hours for the period of July 26 to August 10, 2026, he alleges he was not paid overtime. (¶82-83). He alleges that Peak's other NDT Inspectors performed similar duties and were also paid a salary without overtime compensation. (¶87-88). He asserts Peak improperly classified himself and other NDT Inspectors as salaried workers, even though Peak allegedly knew they were "blue-collar workers." (¶97-100). He asserts claims for FLSA and AWHA violations for failure to pay overtime compensation. Peak moves to dismiss Plaintiff's amended complaint on multiple grounds.[1]

---

[1] At the time of this ruling, Landry had not appeared. Peak nevertheless moves to dismiss claims against itself and Landry.

## Law and Analysis

### I.    Rule 12(b)(6) Standard

The defendant may challenge the complaint for failing to state a claim by filing a motion to dismiss under F.R.C.P. Rule 12(b)(6). When considering a motion to dismiss for failure to state a claim, the district court must limit itself to the contents of the pleadings, including any attachments and exhibits thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir.2000); *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.,* 355 F.3d 370, 375 (5th Cir.2004). The court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir.2007). Conclusory allegations and unwarranted deductions of fact are not accepted as true. *Kaiser Aluminum & Chemical Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982); *Collins v. Morgan Stanley*, 224 F.3d at 498. The law does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). The allegations must be sufficient "to raise a right to relief above the speculative level," and "the pleading must contain something more …than…a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* at 555 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)).

II.   **Whether Plaintiff states a FLSA claim.**

A. **FLSA Coverage**

In order to state a FLSA claim, Plaintiff must first allege sufficient facts triggering statutory coverage. See *Molina-Aranda v. Black Magic Enters., L.L.C.*, 983 F.3d 779, 786 (5th Cir. 2020). The FLSA protects employees "engaged in commerce or in the production of goods for commerce" (individual coverage) and those "employed in an enterprise engaged in commerce or in the production of goods for commerce" (enterprise coverage) from uncompensated overtime. 29 U.S.C.A. § 207(a)(1). See also *Martin v. Bedell*, 955 F.2d 1029, 1032 (5th Cir. 1992) ("*Either* individual *or* enterprise coverage is enough to invoke FLSA protection.") Plaintiff relies on enterprise coverage.

A qualifying enterprise is one which (i) "has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated)." 29 U.S.C.A. § 203(s)(1)(A).

In holding that construction workers/truck drivers stated a claim for enterprise coverage, the Fifth Circuit reasoned:

> [Plaintiffs] identified water, sand, gravel, construction equipment, oilfield equipment, trucks, and fuel as goods or materials

4

> that had potentially been moved in commerce before being handled by Black Magic and its employees. At least some of these items are plausibly goods or materials: they are all items one could plausibly conclude are used in or produced during construction and trucking work. It is also plausible that some or all of these items had travelled interstate at some point in their life cycle. Texas is a large state with considerable industrial capacity, but it does not stretch the definition of plausible for Plaintiffs to allege that at least some of the raw materials and machinery that they handled came from beyond Texas's borders. Importantly, Plaintiffs will have to provide proof of these allegations at the summary judgment or trial stage (after they have had a chance to conduct discovery), but they are not required to provide further details than they have at this stage.

*Molina-Aranda*, 983 F.3d at 787–88.

Similarly, in this case Plaintiff alleges that Defendants operate across several states and that employees work with tools and equipment manufactured globally. (¶39-53). He alleges that employees handle, sell, or work on vehicles, computers, tools, and equipment produced for interstate commerce or which have travelled in interstate commerce, alleging specific examples of certain oilfield parts manufactured in Mexico and globally and used in multiple states. (¶41-46). These allegations amply satisfy the §203(s) commerce requirement.

Peak first challenges the complaint as a "shotgun pleading" based on Plaintiff's use of the collective "Defendants," rather than specifying which alleged acts are attributable to either Peak or Landry. See *Hinojosa v. Livingston*, 807 F.3d 657, 684 (5th Cir. 2015), citing *Weiland v. Palm Beach Cty. Sheriff's Office,* 792 F.3d 1313, 1323 & n. 14 (11th Cir.2015) ("describing this form of 'shotgun

pleading' as a 'sin' consisting of 'asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions.'").[2]

Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Unlike cases in which the plaintiff asserts multiple claims against multiple defendants, who are unable to determine which claims are directed against them (*Weiland's* fourth-type of shotgun pleadings), Plaintiff's claims in this case satisfy Rule 8 in that both Defendants are on notice of Plaintiff's common claims against them. Plaintiff alleges both Defendants are employers who violated FLSA and AWHA. Rule 8 is satisfied despite Plaintiff's allegations against Defendants collectively. See e.g. *Bjorklund v. Novo Nordisk A/S*, 705 F. Supp. 3d 636, 640 (W.D. La. 2023) (declining to dismiss complaint which contained some combined allegations with several distinct factual allegations).

Peak next argues the applicable standards differ as to Peak, a corporate entity, and Landry, an individual, suggesting that Plaintiff's allegations against

---

[2]   See discussion of *Weiland's* four types of shotgun pleadings in *In re Ozcelebi*, 635 B.R. 467, 472 (Bankr. S.D. Tex. 2021). Peak argues the complaint falls under *Weiland's* fourth type of pleading.

"Defendants" collectively are thereby improper. However, an "enterprise" as necessary to trigger enterprise coverage, is not limited to corporate entities. Peak cites no authority for the proposition that an enterprise cannot be an individual and instead relies on the economic reality test, which is a question of liability (further discussed below) rather than coverage.

Peak also challenges Plaintiff's reliance on external hyperlinks to third-party entities' websites purporting to show where certain parts were manufactured. While Peak correctly notes that the Court is confined to the contents of the complaint at this stage of the proceedings, the Court finds that Plaintiff's allegations are sufficient, notwithstanding the inclusion of hyperlinks, to show that Plaintiff used or handled tools and equipment which had travelled in interstate commerce at some point.

Regarding the §203 requirement that gross revenue exceeds $500,000, Peak argues that Plaintiff's revenue allegations are internally inconsistent. Plaintiff alleges that Defendants' annual gross volume of sales/business exceeded $1 million annually. (¶54). Subsequent allegations state that Defendants' Houston operations generated sales of $20-30,000/month; West Texas operations generated $40-50,000/month; Alaska operations generated $60-75,000/month (¶56-57) (or $1.4 to $1.9 million annually), and that Defendants' fifteen NDT Inspectors each generated an average gross revenue of $15-25,000/month (¶60), or $2.7 to $4.5 million

annually). The Court does not interpret Plaintiff's allegations as inconsistent. He alleged that Peak also operates in Louisiana, Ohio, and Pennsylvania (¶44), such that his allegations of revenues from Texas and Alaska do not render his allegations of total Inspector-generated revenue inconsistent. Regardless, all allegations show that revenue exceeded the FLSA threshold. Plaintiff has stated a claim for FLSA enterprise coverage.

### B. **Prima Facie FLSA Claim**

Having stated a claim for FLSA coverage, Plaintiff's allegations must also satisfy Rule 12(b)(6) standards to state a prima facie overtime-pay claim under 29 U.S.C. § 207(a)(1). He must plausibly allege: (1) that an employer-employee relationship existed during the time that he worked in excess of forty hours per week; (2) that he engaged in activities covered by the FLSA; (3) that the employer violated the FLSA's overtime-wage requirements; and (4) the amount of overtime-pay due. *White v. U.S. Corr., L.L.C.,* 996 F.3d 302, 309 (5th Cir. 2021).

Peak challenges Plaintiff's allegations as failing to show that he worked overtime, but Peak did not explain its position. (Rec. Doc. 17-1). Plaintiff alleges that he worked at least twelve hours a day and sixty hours per week in Texas and eighty-four hours per week in Alaska. (Rec. Doc. 12, ¶77-81). As an example, he alleges that during the two-week period of July 26 through August 10, 2025, he

worked sixty hours each week and was not paid overtime. (¶82-85). Plaintiff's allegations show that he worked overtime.

Peak more substantively argues that Plaintiff fails to state a claim against Landry individually. In other words, Peak argues that Plaintiff's allegations do not show the existence of an employer-employee relationship between Landry and Plaintiff, an essential element for an FLSA claim. The Fifth Circuit explained:

> An "employer" includes any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The Fifth Circuit uses the "economic reality" test to evaluate whether there is an employer/employee relationship. The test originates in the Supreme Court's holding that "economic reality" should govern the determination of employer status under the FLSA. *Goldberg v. Whitaker House Coop.,* 366 U.S. 28, 33, 81 S.Ct. 933, 936 (1961). To determine whether an individual or entity is an employer, the court considers whether the alleged employer: (1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records. In cases where there may be more than one employer, this court must apply the economic realities test to each individual or entity alleged to be an employer and each must satisfy the four part test.

*Gray v. Powers*, 673 F.3d 352, 354–55 (5th Cir. 2012) (cleaned up).

An individual's status as a member or officer of an employing entity is insufficient alone to confer employer status, absent evidence of actual operational control. *Id*. at 355-56. Determination of employer status is a question of fact. See *id*. The only facts which the Court may consider at this stage are those as alleged in the complaint.

9

Plaintiff alleges that Landry is one of Peak's two owners, that he hired Plaintiff, that he exercises authority to terminate, discipline, and evaluate NDT Inspectors, that he sets inspectors' pay, certified Peak's inspectors, and otherwise oversees inspectors' work, such as ensuring they have the right tools and arranging flights for work in other states. (Rec. Doc. 12, ¶19-37). Plaintiff specifically alleges that Landry personally disciplined him in Alaska (¶23) and that when he (Plaintiff) discussed his pay with Peak, the other (unnamed) co-owner had to get Landry's approval. (¶25). These allegations, assumed as true and in Plaintiff's favor, are sufficient to show that Landry exercised operational control over Plaintiff and, as such, created an employer-employee relationship. See also *Carmack v. Park Cities Healthcare, LLC*, 321 F. Supp. 3d 689, 698 (N.D. Tex. 2018) and *Patterson v. O'Bar Wrecker Serv., LLC*, 685 F. Supp. 3d 387, 397 (N.D. Tex. 2023) (finding both the defendant entity and its owner were FLSA employers based on the owner's duties vis-à-vis employees). Compare *Mendoza v. Detail Sols., LLC*, 911 F. Supp. 2d 433, 444 (N.D. Tex. 2012) ("Mendoza's bare assertion that Mr. Austein exercised operational control over Detail Solutions is neither dispositive nor persuasive in the absence of specific facts indicating such control.") Although later proceedings may dictate a different result after discovery, the Court finds that at this early stage Plaintiff has stated a FLSA claim against both Peak and Landry.

## C. <u>Willfulness</u>

Peak moves to dismiss Plaintiff's claims beyond a two-year time period. FLSA claims must be filed within two years after the of action accrues, or within three years if the alleged violation was "willful." 29 U.S.C. § 255(a). "An employer willfully violates the FLSA if it 'either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'" *Ikossi-Anastasiou v. Bd. of Supervisors of Louisiana State Univ.,* 579 F.3d 546, 552 (5th Cir. 2009), quoting *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133, 108 S.Ct. 1677 (1988).

Courts beyond and within the Fifth Circuit are split as to the standard with which a plaintiff must plead facts to state a claim for willful violations. Some courts find that the mere allegation of willfulness is sufficient, while others require that willfulness be plead with particularity. See discussion in *Powell v. LaSalle Corr. L.L.C.*, No. 3:23-CV-00391, 2023 WL 5273772, at *3 (W.D. La. July 31, 2023), report and recommendation adopted sub nom. *Powell v. LaSalle Corr. LLC*, No. 3:23-CV-00391, 2023 WL 5254693 (W.D. La. Aug. 15, 2023), and cases cited therein.

Under either standard, Plaintiff's allegations pass "willfulness" muster. He alleges that Defendants do not maintain records of hours worked (¶96) as required by the FLSA, knew that Plaintiff and NDT inspectors worked more than forty hours

11

per week because they made the assignments and remained in contact with the Inspectors and customers until jobs were complete (¶97), knew that Plaintiff and NDT Inspectors' job duties were "blue-collar" rather than exempt executive, professional, or administrative employees (¶98), nonetheless failed to pay them overtime (¶100), and thus willfully violated the FLSA (¶101). Plaintiff has stated a claim for willful violations. See *id* at *4, finding the plaintiff stated a claim for willful violations with similar allegations.

### D. <u>Collective Action Allegations</u>

Peak moves to dismiss Plaintiff's collective action allegations. Most courts within the Fifth Circuit agree "that FLSA claims brought on behalf of a collective are subject to a motion to dismiss for failure to state a claim." *Truong v. Magnolia Fleet, LLC*, 724 F. Supp. 3d 568, 572 (E.D. La. 2024).

> The Federal Rules of Civil Procedure apply in all civil actions pending before federal courts. Absent an act of Congress directing it to do otherwise, the court will consider Rule 12(b)(6) motions directed at FLSA collective action claims. When analyzing such motions in the collective action context, however, the court must use "judicial experience and common sense." See *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937. Prior to certification, collective actions concern individuals who are not presently before the court and may not have communicated with the named plaintiffs' attorneys. Recognizing this, courts that apply Rule 12(b)(6) motions to collective action claims simply require plaintiffs to "give the defendant fair notice of the putative class." *Dyer,* 2013 WL 609307, at *3. This arguably more liberal Rule 12(b)(6) standard allows both the rule and the certification process to play their proper role in the management of collective actions.

*Flores v. Act Event Servs., Inc*., 55 F. Supp. 3d 928, 934 (N.D. Tex. 2014).

> To prevail on a motion to dismiss in the FLSA collective context, a plaintiff's complaint must allege facts sufficient to demonstrate that he and potential plaintiffs were victims of a common policy or plan that violate the law. To meet this standard, district courts require the complaint give the defendant fair notice of the putative class. Courts have generally found that a relevant consideration in determining this is whether the complaint provides details about or descriptions of the similarly situated parties, along with sufficient facts to show that they were subject to the same pay provisions.

*Truong*, 724 F. Supp. 3d at 576 (internal quotations omitted), citing *England v. Admins. of the Tulane Ed. Fund*, No. 16-CV-3184, 2016 WL 3902595, at *4 (E.D. La. Jul. 19, 2016).

Plaintiff identifies similarly situated employees as "all salaried NDT Inspectors employed by Peak at any time since January 12, 2023." (Rec. Doc. 12, ¶90). He alleges that other NDT Inspectors work similar schedules to himself, perform similar duties, and are paid a salary plus commission without overtime. (¶86-88). Because Plaintiff alleged specific allegations regarding his own schedule (¶77-84), duties (¶65-73), and compensation (¶2; 82-83), the Court finds that allegations of similarity satisfy Rule 12(b)(6) as a putative collective action. See also *id.* at 577 (finding the complaint, which identified similarly situated employees by job title, job description, and compensation, stated a collective action claim).

The fact that Plaintiff did not identify similarly situated employees by name is not a deficiency as Peak argues. Additionally, the Court is not persuaded by Peak's argument that Plaintiff's allegations are conclusory. Because the Plaintiff alleged

specific facts regarding his own work schedule, duties, and compensation, his allegation that other employees were "similar" is sufficient. The Court will not require specific factual allegations regarding other (possibly unknown) employees at this early stage of proceedings. The certification stage shall limit the identity of plaintiffs to those who were similarly situated.

Finally, Peak argues that the proposed collective action should not consist of employees who worked before Plaintiff was hired in January 2024; however, Peak cites no authority—and the Court appreciates none—which requires the named plaintiff to have personal knowledge of every other employee who may fit the class parameters at the time of the complaint. Whether the Court should certify the case as a collective action is a question addressed at a later stage of proceedings.

### III.    **Whether Plaintiff states an AWHA claim.**

Peak argues that Plaintiff does not state an AWHA claim against Landry, because the complaint does not allege facts connecting Landry to Alaska or that Landry would qualify as an employer under the statute.

> The Alaska Wage and Hour Act (AWHA) governs the payment of overtime. It provides that if an employer finds it necessary to employ an employee for hours in excess of the limits set in this subsection, overtime compensation for the overtime at the rate of one and one-half times the regular rate of pay shall be paid…The Fair Labor Standards Act (FLSA) applies concurrently and requires overtime pay under circumstances identical to those identified in the AWHA. The terms used in the AWHA, if not defined in Alaska law, carry the definitions used in the FLSA.

*Resurrection Bay Auto Parts, Inc. v. Alder*, 338 P.3d 305, 307–08 (Alaska 2014) (cleaned up), overruled on other grounds by *Buntin v. Schlumberger Tech. Corp.,* 487 P.3d 595 (Alaska 2021). See also Alaska Stat. Ann. § 23.10.145.

The AWHA does not contain an independent definition of employer; the FLSA definition thus applies. Because, as discussed above, the Court finds Plaintiff's allegations sufficiently qualify Landry as a FLSA employer, the allegations are sufficient to qualify Landry as an AWHA employer.

## Conclusion

For the reasons discussed herein, the Court recommends that Peak NDT Solutions, LLC's Motion to Dismiss First Amended Complaint (Rec. Doc. 17) be denied.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized

15

by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. §636(b)(1).

THUS DONE in Chambers, Lafayette, Louisiana on this 22nd day of June, 2026.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE